**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| BOOMERANG TUBE, ENERGEX TUBE, A DIVISION OF JMC STEEL GROUP, TMK IPSCO, AND WELDED TUBE USA INC., <br>                        Plaintiffs, <br><br>            v. <br><br> UNITED STATES, <br>                       Defendant. | Court No. 14-00196 |

**COMPLAINT**

Plaintiffs, Boomerang Tube, Energex Tube, a division of JMC Steel Group, TMK IPSCO, and Welded Tube USA Inc., allege as follows:

**Jurisdiction**

1.      Plaintiffs bring this action pursuant to Section 516A(a)(2)(A)(i)(II) and (2)(B)(ii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(A)(i)(I) & (2)(B)(ii).

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c), which gives this Court exclusive jurisdiction over civil actions commenced under 19 U.S.C. § 1516a.

3.      Plaintiffs seek judicial review of the amended final negative determination of the U.S. Department of Commerce ("Commerce") in the antidumping duty investigation of oil country tubular goods from Saudi Arabia, *Oil Country Tubular Goods from Saudi Arabia,* 79 Fed. Reg. 49051 (Final AD determination) (the "Final Determination").

4.      This complaint is being filed concurrently with the summons and within 30 days of publication of the Final Determination.  It is thus timely pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I).

**Standing**

5.      Each of the Plaintiffs is a U.S. producer of the subject merchandise.  Thus each Plaintiff

is an "interested party" within the meaning of 19 U.S.C. § 1677(9)(C) who was a party to the

proceeding in connection with which this matter arises.  Thus, Plaintiffs have standing under 19

U.S.C. § 1516a(a)(2).

**History of the Case**

6.      On July 2, 2013, Plaintiffs and other U.S. producers filed petitions with the U.S.

Department of Commerce ("the Department") and U.S. International Trade Commission ("ITC")

alleging that imports of oil country tubular goods ("OCTG") from Saudi Arabia, among other

countries, had been entered at less than normal value.

7.      In its preliminary determination, published on February 25, 2014 (79 Fed. Reg. 10489),

the Department determined that OCTG produced by Jubail Energy Services Company

("JESCO") and exported by Duferco S.A. was being, or is likely to be, sold in the United States

at less than fair value. It determined a weighted average dumping margin of 2.92 percent. The

Department found that each of the Duferco companies involved "is part of a chain of transactions

requiring extensive coordination of sales and production decisions (e.g., price negotiations,

production planning, and shipping) and the sharing of sales information. As such, in accordance

with 19 CFR 351.401(t) and the Department's practice, we are treating these Duferco companies

as a single entity (Duferco entity) for purposes of this preliminary determination." February 14,

2014 Decision Memorandum for the Preliminary Determination in the Antidumping Duty

Investigation of Oil Country Tubular Goods from Saudi Arabia, at 7. The Department also found

that the Duferco entity was affiliated with JESCO under 19 U.S.C. § 1677(33)(E).

2

8.      Pursuant to 19 U.S.C. § 1677b(a)(a)(A) and (B), the Department tested the viability of the Saudi Arabian home market, and found that JESCO's home market sales of OCTG were greater than five percent of the aggregate volume of U.S. sales, and accordingly found the home market to be viable. *Id.* at 8. The Department, however, found that JESCO was affiliated with its largest customer in Saudi Arabia. *Id.* at 7. It therefore conducted its standard arm's length test with respect to its sales to its affiliate, and found that all of the sales JESCO made to its affiliated customer failed the arm's-length test. *Id.* at 8. In addition, all of the sales made to unaffiliated customers in Saudi Arabia failed the cost of production test, which meant that they had to be disregarded when calculating normal value pursuant to 19 U.S.C. § 1677b(b)(2)(C)(i). This left no home market sales available as the basis for normal value, and the Department therefore had to use constructed value as the basis for normal value, pursuant to 19 U.S.C. § 1677b(e).

9.      The Department used JESCO's cost of production as a basis for constructed value, but to determine constructed value profit ("CV profit"), the Department determined to apply 19 U.S.C. § 1677b(e)(2)(B)(iii) and base profit on "any other reasonable method." *Id.* at 10-11. It used the publicly available financial statements of Saudi Steel Pipe Company for 2012.

10.     The Department had asked for, and JESCO/Duferco had provided, price information for JESCO/Duferco's sales to customers in Colombia as a possible basis for normal value. The Department did not use these sales in the preliminary determination, and it did not verify the information provided. The Department also placed into the record the 2012 financial statement for the OCTG producer Tenaris SA, which manufactures OCTG in a number of countries.

11.     In its case brief, JESCO/Duferco presented a number of alternatives for the calculation of CV profit, including using the profit on JESCO/Duferco's sales to Colombia among the suggestions. JESCO/Duferco submitted a spreadsheet in its case brief that included a calculation

of profit using the sales to Colombia. Plaintiffs argued for the use of Tenaris SA's financial statement, and argued that the use of the sales to Colombia would be inappropriate.

12.     The Department's Final Determination, published on July 18, 2014 (79 Fed. Reg. 41986), revealed some minor changes in the calculation of JESCO's cost of production, and a major change in the source of CV profit. Instead of using the financial statement of Saudi Steel Pipe, as it had in the preliminary determination, the Department calculated CV profit using JESCO/Duferco's sales to Colombia. Instead of using the spreadsheet that JESCO/Duferco had submitted with its case brief, the Department made its own calculation, using a different metholodogy than JESCO/Duferco had proposed. The resulting dumping margin was 2.69 percent.

13.     On July 21, 2014, JESCO/Duferco submitted a ministerial allegation pursuant to 19 C.F.R. § 351.224(c). JESCO/Duferco argued that the Department had inadvertently failed to deduct certain movement expenses incurred in transporting JESCO's OCTG from the factory to Colombia, thus overstating the amount of CV profit. While Plaintiffs believed that the Department had made a methodological error in choosing sales to Colombia for CV profit, such arguments cannot be made in a reply to a ministerial error allegation. Plaintiffs instead pointed out that the Department's decision not to deduct those movement expenses when calculating CV profit was a methodological decision rather than a ministerial error, and it was therefore not appropriate to address this issue in a ministerial error allegation.

14.     By memorandum dated August 11, 2014, the Department decided that not deducting the movement expenses in question when calculating CV profit was a ministerial error. The dumping margin was recalculated from 2.69 percent to 1.37 percent, which is *de minimis*. As a result, the

Department published an Amended Final Determination of August 19, 2014 (79 Fed. Reg. 49051), changing its affirmative determination to a negative determination.

## Claim of Error

15.    Because of single entity, affiliation, and cost of production issues, the Department could not, as a matter of law, use JESCO/Duferco's sales to Colombia as the basis for CV profit. The Department must use another source to calculate JESCO/Duferco's CV profit.

16.    The Department's determination to use JESCO/Duferco's sales to Colombia as the basis for CV profit was not supported by substantial evidence.

## Prayer for Relief

17.    WHEREFORE, Plaintiffs ask that the Court find the Department's determination to be not supported by substantial evidence and not in accordance with law, remand the matter to the Department for disposition in accord with the judgment of the Court, and provide such other relief as the Court may deem just.

Respectfully submitted,

/s/Roger B. Schagrin/
Roger B. Schagrin
Schagrin Associates
900 7th St. NW Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for Plaintiffs*
*Boomerang Tube, Energex Tube, a division*
*of JMC Steel Group, TMK IPSCO, and*
*Welded Tube USA Inc.*

Date:  August 22, 2014